Morris v. Wicks.

FRED L. MORRIS, *Appellant,* v. C. S. WICKS *et al.,*
*Appellees.*

No. 16,346.

SYLLABUS BY THE COURT.

DEEDS—*Quitclaim—Consideration—Prior Unrecorded Deed by Same Grantor.* In order for the grantee in a quitclaim deed to take advantage of the statute requiring conveyances of real estate to be recorded, and thereby to defeat the title held under an earlier unrecorded deed executed by the same grantor, he must have paid a valuable consideration therefor, and the payment of a merely nominal amount will not meet this requirement.

Appeal from Wilson district court; JAMES W. FINLEY, judge. Opinion filed February 12, 1910. Reversed.

*Bennett R. Wheeler,* and *John F. Switzer,* for the appellant.

*Atwood Cady,* and *E. D. Mikesell,* for the appellees.

The opinion of the court was delivered by

MASON, J.: In 1891 Alvin Dunnakin conveyed a house and lot, of which he was the owner, to Eli Stringer, by a deed which was not recorded until 1905. In April, 1899, the property being then unoccupied, C. S. Wicks obtained a quitclaim deed from Dunnakin, and took possession. This deed recited that it was executed in consideration of the payment of one dollar. Unpaid taxes had accrued amounting to about $105.

On October 11, 1899, Wicks obtained a compromise tax-sale certificate for $40, and on April 11, 1900, he received a tax deed based thereon. In 1905 Stringer conveyed to Fred L. Morris, who brought ejectment against Wicks. Wicks answered claiming title under his quitclaim and also under his tax deed. The court found generally for the defendant, and the plaintiff appeals.

The tax deed was void upon its face because issued one day too soon—before the right to redeem had expired. (*James v. Manning,* 79 Kan. 830.) The question to be determined is whether Wicks, who testified that he paid Dunnakin one dollar for the quitclaim deed, is entitled to protection against the unrecorded warranty deed which his grantor had already executed. In order to derive a benefit from the recording act he must have been a purchaser for a valuable consideration. (*Grocer Co. v. Alleman,* ante, p. 543.)

"The recording acts were intended for the protection of those who should part with something of value, or suffer some loss, by reason of having acted upon the faith of a conveyance and in ignorance of some prior transaction which, in the absence of the operation of these provisions, would defeat the intended acquisition of some new interest. It is necessary that the subsequent purchaser, in order to be entitled to the protection of the recording acts, obtain his conveyance for a valuable consideration." (24 A. & E. Encycl. of L. 138.)

According to the great weight of authority the payment of a merely nominal amount is not sufficient to satisfy this condition. The cases bearing on this precise question are collected in a note in 16 L. R. A., n. s., 1073, to which may be added *Lumpkin v. Adams & Wicks,* 74 Tex. 96, 102, *Nichols-Steuart v. Crosby,* 87 Tex. 443, and *Abernathy v. Railroad,* 150 N. C. 97. Many courts hold that, regardless of the consideration paid, one who accepts a quitclaim deed can not invoke the benefit of the registration act against the holder of

an unrecorded warranty deed. In a note in 105 Am. St. Rep. 859 it is said:

"The argument has generally prevailed that as a quitclaim deed purports to convey only the interest of the grantor, it can not have any operation when he has already parted with his interest, and that it is not material that his grantee had no actual notice of that fact; that the restricted language of the conveyance is equivalent to notice, and, as a final result, that he who accepts such a conveyance can not, within the meaning of the registry acts, be a *bona fide* purchaser and as such entitled to protection against prior conveyances or encumbrances made by his grantor or equities existing against him."

This rule at one time obtained in the federal supreme court, but has been changed by later decisions. (See *Boynton v. Haggart,* 57 C. C. A. 301.) It has never prevailed in Kansas. In this state the grantee in a quitclaim deed may under some circumstances claim the benefit of the record, even although he has not paid a full or adequate consideration. (*Ennis v. Tucker,* 78 Kan. 55, 62.) There is a manifest difference, however, between a consideration which is merely inadequate and one which is absolutely nominal. The statute relating to the recording of conveyances is intended to promote justice and is to be administered according to equitable principles. No one is entitled to take advantage of it unless he is a purchaser in good faith, and this implies that he has made some payment, or surrendered some right, or done some act, so that if his claim of title fails he is left in a worse position than he was before. This situation may arise from his payment of a small amount, provided it is substantial. The courts do not undertake to measure his loss and limit the effect of the statute by denying his title upon compensation being made. But unless he has actually suffered some loss he is regarded as not being in a position to invoke the benefit of the statute. And the payment of a merely nominal consideration is properly

treated as no payment at all, and disregarded altogether. Under some circumstances the amount paid may be so insignificant in comparison with the value of the property as fairly to be deemed unsubstantial on that account. Or the amount may be so small in itself as to disclose that the payment was a mere form—that it really played no material part in the transaction.

In *Ten Eyck et al. v. Witbeck et al.*, 135 N. Y. 40, a leading case on the question, overruling earlier decisions, it was said:

"A small sum, inserted and paid, perhaps because of a popular belief that some slight money consideration is necessary to render the deed valid, will not of itself satisfy the terms of the statute, where it appears upon the face of the conveyance, or by other competent evidence, that it was not the actual consideration." (Page 46.)

And in *Wisconsin River Land Co. v. Selover*, 135 Wis. 594:

"The statute was not enacted to protect one whose ignorance of the title is deliberate and intentional, nor does a mere nominal consideration satisfy the requirement that a valuable consideration must be paid. Its purpose is to protect the man who honestly believes he is acquiring a good title and who invests some substantial sum in reliance on that belief." (Page 597.)

In *Strong v. Whybark* the supreme court of Missouri upheld a quitclaim to a quarter section of land reciting a consideration of five dollars against an outstanding unrecorded deed. In the opinion as published in 102 S. W. 968 it was said:

"It seems to us that it would be a useless waste of time and energy to cite authorities in support of the proposition that five dollars or any other stated sum of money is a valuable consideration within the meaning of the law of conveyancing." (Page 969.)

In the official report this language is modified by the insertion, after "five dollars or any other stated sum of money," of the limitation, "in excess of one cent, one

dime, or one dollar, which are the technical words used to express nominal considerations." (204 Mo. 341, 347.)

In the present case it is clear that the quitclaim was made gratuitously; that the consideration was purely nominal; that the sum of one dollar was paid, and a recital to that effect inserted in the deed, because of a belief that these matters were essential to its validity. That the conveyance was not made because of the payment of the dollar conclusively appears from the testimony of Wicks, who thus described the negotiations leading up to its execution:

"I says: 'Mr. Dunnakin, I see by the records that the Ben. Way property is still in your name.' He says: 'Yes.' I says: 'There is a big lot of taxes piled up against it, and if you will give me a quitclaim deed I will pay the taxes.' He says, unhesitatingly: 'I will do it.'"

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.