No. 27,700.

JOHN C. FALK, *Appellee*, v. ROSIA FALK FULTON et al., *Appellants*.

(262 Pac. 1025.)

SYLLABUS BY THE COURT.

1. FRAUDS, STATUTE OF—*Sufficiency of Writing—Time of Making.* The length of time intervening between the making of an oral agreement and the written memorandum thereof required by the statute of frauds is immaterial.

2. LIMITATIONS OF ACTIONS — *Computation of Period — Accrual of Right of Action—Right of Election of Remedy.* The three-year statute of limitations cannot be applied to an action to set aside a deed recently executed, simply because some other action to enforce an implied trust might possibly have been maintained more than three years before.

3. FRAUDS, STATUTE OF—*Sufficiency of Writing—Will.* The execution of a will by one devising all of his property to his nephew and delivering the will to him is a sufficient memorandum in writing to take an oral agreement between them out of the operation of the statute of frauds and the statute of trusts and powers when the provisions of the will coincide with the terms of the oral agreement.

4. VENDOR AND PURCHASER—*Bona Fide Purchaser—Consideration—Covenant to Support.* One who agrees to support and maintain the grantor in a deed during his lifetime is not a *bona fide* and innocent purchaser for a valuable consideration as against secret equities binding the land in the hands of the grantor.

Appeal from Edwards district court; ROSCOE H. WILSON, judge. Opinion filed January 7, 1928. Affirmed.

*W. E. Broadie,* of Kinsley, and *R. C. Russell,* of Great Bend, for the appellants.

*Carl Van Riper,* of Dodge City, and *A. L. Moffat,* of Kinsley, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by John C. Falk to cancel and set aside a deed made by his uncle, Albert Falk, December 1, 1925, to his niece, Rosia Falk Fulton, for the reason that it was made in violation of an oral agreement of the grantor with the plaintiff, confirmed by the subsequent execution of a will by the uncle. The grantor and grantee of such deed were parties defendant and by their answers raised questions involving the three-year statute of

Appeal and Error, 4 C. J. p. 883 n. 33. Frauds, Statute of, 27 C. J. pp. 259 n. 40, 264 n. 96; 44 L. R. A. n. s. 748; 25 R. C. L. 644. Limitation of Actions, 37 C. J. p. 807 n. 92. Vendor and Purchaser, 39 Cyc. p. 1699 n. 1; 27 R. C. L. 696.

limitations, the statute of frauds, the statute of trusts and powers, and the good faith and innocence of the purchaser. The grantor expressly denied the making of the oral contract alleged and the making of the will in fulfillment of any contract whatever. The trial court made findings of fact, including them in the journal entry, and rendered judgment thereon in favor of the plaintiff, setting aside the deed except in so far as it conveyed the life estate of the grantor and decreed the plaintiff to be the owner of the remainder in fee after the death of the grantor. The defendants appeal.

The findings of fact made by the trial court will serve as the best statement that can be given of the necessary facts involved. They are as follows:

"1. Prior to 1890 Charles H. Falk, who was the father of the plaintiff herein, and a brother of the defendant Albert Falk, held the title to the land in controversy; and on February 10, 1890, he conveyed said land to Emilia Hottewitz as security for a loan of money; and on November 11, 1895, the said Emilia Hottewitz, at the instance of Charles H. Falk, conveyed said land to the plaintiff herein.

"2. For a number of years, both prior and subsequent to these conveyances, Charles H. Falk and Albert Falk had lived on the north half of section 22, township 23, range 19, Edwards county, Kansas, and had farmed the same together, and Albert Falk had contributed some money towards making improvements thereon.·

"3. Shortly prior to July, 1911, Albert Falk, desiring to remove to the state of Texas, made a claim upon the plaintiff herein for work and labor which he had performed, and also claimed an interest in the north half of section 22, township 23, range 19, in Edwards county, Kansas, and on July 28, 1911, an oral agreement was made between John C. Falk and Albert Falk whereby a settlement was made of all controversies between them, and it was agreed that John C. Falk should convey the land in controversy to Albert Falk, and Albert Falk at that time agreed that he would either deed the land or make a will so that at his death the same should again become the prop-·erty of John C. Falk; and on July 28, 1911, John Falk conveyed said land, being the northeast quarter of section 22, township 23, range 19, Edwards county, Kansas to Albert Falk, and at such time said land was of the value of $7,200.

"4. About the year 1912 Albert Falk went to live with his niece, Minnie Feese, in the state of Texas, where he continued to reside until the year 1921.

"5. On October 24, 1912, Albert Falk executed a mortgage on said land to Fidelity Trust Co., which mortgage is recorded in the office of the register of deeds of Edwards county, Kansas, in book 3, pages 159-162.

"6. On June 21, 1922, Albert Falk and John Falk and wife executed two mortgages to the Warren Mortgage Company, both of which are recorded in the office of the register of deeds of Edwards county, Kansas, one being in book 9, page 31, and the other in book 9, page 337.

Falk v. Fulton.

"7. On the 24th day of May, 1917, said Albert Falk executed a deed to said land to Minnie Falk Feese and said deed was filed of record in Edwards county, Kansas, on July 12, 1917, and on July 31, 1921, the said Minnie Falk Feese executed a deed to the said land to Albert Falk.

"8. In the year 1921 Albert Falk returned to Edwards county, Kansas, and made his home with the plaintiff herein. During the month of September, 1922, he suffered a stroke of paralysis, and on September 22, 1922, he executed a will devising the land in controversy to the plaintiff, John C. Falk.

"9. In the year 1925 the said Albert Falk went to live with his niece, Rosia Falk Fulton, in Ohio, and on December 1, 1925, executed a deed conveying said land to her upon an agreement upon her part that she would care for him during his lifetime, and provide for him a decent burial at his death, and the said Rosia Falk Fulton has since said time cared for the said Albert Falk.

"10. The said Rosia Falk Fulton had no notice or knowledge at or prior to the time of the making of the said agreement and the conveyance of said land to her of any contract or agreement between John C. Falk and Albert Falk relative to said land."

The first point of error discussed by the appellants is that the judgment is not supported by the findings of fact, and they apply the rules and requirements under the statute of frauds and the statute of trusts and powers. Of course both these statutes require some contract or memorandum in writing before any interest in land or the creation of a trust can be valid or enforceable. The appellants argue that the execution of the will by Albert devising everything he owned to his nephew John, eleven years later than the time of the alleged oral agreement, is not a compliance with the requirements because of the long period intervening and because the will does not recite or refer to the oral agreement. We do not think the rules or the cases cited go that far.

"The memorandum of the contract required by the statute of frauds may be made subsequently to the making of the contract itself, and at any time before an action is brought on the contract." (27 C. J. 263.)

"Although thirty years has elapsed since the time of the alleged agreement, considerable testimony was produced tending strongly to show that the agreement was made and was frequently spoken of to neighbors by the parents of plaintiff. It is said that such agreements must be shown by convincing proof, but it is enough if, upon substantial evidence supporting the agreement, the trial court has determined its sufficiency." (*Lyons v. Lyons,* 114 Kan. 514, 518, 220 Pac. 294.)

The general authorities cited by the appellants contain exceptions which apply to the facts in this case. The reference to 25 R. C. L. 592 applies only where the possession of the will is retained by the promisor.

"If the will makes no reference to the oral agreement *and its possession is retained by the promisor,* though it may have been made in pursuance thereof, it will not constitute a sufficient written memorandum thereof to take the agreement out of the operation of the statute." (25 R. C. L. 592.)

Likewise, the reference to 27 C. J. 259, where it is stated a will is not a sufficient memorandum in writing if it does not coincide with the oral contract.

"A will may be a sufficient memorandum; but not where it does not contain the contract in question, *or does not coincide therewith,* or where it fails to refer to, or show a connection with, the agreement or bargain in question." (27 C. J. 259.)

Elsewhere in the same articles the question of identity of subject matter is considered. There must be no ambiguity or uncertainty in the coinciding of the writing with the oral agreement as to parties, property, or kind of estate. In this case, as shown by the evidence and the findings, all these matters completely coincide. There is no confusion or inconsistency between the terms of the oral agreement and the will. We find no authority, where the written memorandum fully coincides with the oral contract and is delivered to the grantee or devisee, which requires that the deed or will expressly refer to the making of the previous oral agreement. Our own state has frequently held that wills were sufficient to take the case out of the statute where no reference was made therein to the oral contract. In the case of *Nelson v. Schoonover,* 89 Kan. 388, 392, 131 Pac. 147, it was said: "The will itself has been treated as such a memorandum of the agreement as to satisfy the statute." In the case of *Nash v. Harrington,* 110 Kan. 636, 205 Pac. 354, the language of the will is set out and contains no reference to an oral contract, and it was held to be sufficient for the same purpose as far as the will was concerned, but the plaintiff in that case failed for a different reason. (See, also, *Newton v. Lyon,* 62 Kan. 306, 62 Pac. 1000; *Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731; *Arnett v. Wescott,* 107 Kan. 693, 193 Pac. 377.)

Counsel for both parties refer to the case of *Nelson v. Schoonover,* supra, as being more or less applicable to the case at bar. We think it is quite applicable and really decisive of this case.

"An oral agreement between husband and wife that she will make a will leaving to him all the property owned by her at the time of her death, both real and personal, in consideration of real estate owned by him being conveyed to her, is rendered enforceable, notwithstanding the statute of frauds, where in

accordance with its provisions the title to land paid for by the husband is taken in the wife's name, and she makes such a will, and thereafter in reliance thereon he expends labor and money in improving the property." (Syl. ¶ 2.)

"A will executed under an agreement founded upon a valuable consideration is contractual as well as testamentary. In the latter aspect it may be revoked without the consent of the beneficiary, but not in the former. . . ." (Syl. ¶ 3.)

"A will duly executed, in pursuance of an agreement based upon a valuable consideration, becomes itself, in a sense, an enforceable contract. The testator cannot, by making a later will, escape the obligation confirmed by the first one. . . . The delivery of the will to the beneficiary has been treated as of importance in emphasizing the contractual feature of the transaction . . . but has been said not to be essential." (p. 392.)

"Neither the statute of frauds nor the statute of trusts and powers is a bar to the enforcement of an oral agreement to make a will when it has been fully performed by one of the parties, following the rule announced in *Gemmel v. Fletcher*, 76 Kan. 577, 92 Pac. 713, and *Smith v. Cameron*, 92 Kan. 652, 141 Pac. 596." (*Meador v. Manlove*, supra, syl. ¶ 4.)

If there were any serious question of the will being sufficient in itself to take this case out of the statute of frauds and the statute of trusts and powers, authorities are abundant, as cited by appellee, to give the plaintiff herein an equitable and enforceable contract by virtue of full compliance on his part. (*Lehrling v. Lehrling*, 84 Kan. 766, 115 Pac. 556; *Ackerman v. Alden*, 123 Kan. 116, 254 Pac. 322.)

It is contended by the appellants that this action is in effect one to enforce an implied trust and therefore there must be allegation and proof of fraud or deceit, but such does not seem to have been the holding of the trial court or to be reasonably inferred from the pleadings. The findings show that the plaintiff gave his uncle an absolute deed in settlement of all differences and with the distinct understanding that the uncle would devise the land back to him. When the uncle made such a will and delivered it to the plaintiff it became an executed contract, irrevocable by the uncle, and the statute of frauds would not apply. (*Hill v. Maxwell*, 71 Kan. 72, 79 Pac. 1088; *James v. Manning*, 79 Kan. 830, 101 Pac. 628; *Harris v. Morrison*, 100 Kan. 157, 163 Pac. 1062.)

This action, under the evidence and the findings, did not accrue until the uncle made the will. Perhaps some other kind of an action could have been instituted during the time the uncle failed to comply with the agreement by executing his will, but certainly not this kind of an action, nor against these parties. There was no occasion, after

the will was made, to do anything to protect the rights of the plaintiff until the deed was executed to Mrs. Fulton, which was only a few months before the commencement of this case.

It is said the grantee, Mrs. Fulton, was a *bona fide* and innocent purchaser for value, agreeing to support and maintain the grantor during his life and furnish a respectable burial. We do not understand that such is a valuable consideration when against the interest of other or third parties. (*Morris v. Wicks,* 81 Kan. 790, 106 Pac. 1048.)

"A conveyance in consideration of the future support of the grantor for life, though a valuable consideration in the ordinary sense, is not such a valuable consideration as will entitle the grantee to protection as against secret equities binding the land in the hands of the grantor." (27 R. C. L. 696. See, also, 39 Cyc. 1698.)

We think the evidence, though conflicting as to the making of the oral agreement, fully supports the findings, and the findings justified the trial court in rendering the judgment it did in favor of the plaintiff and against the defendants.

"Rule followed that the trial court's findings of fact, when based upon sufficient though disputed or conflicting testimony, will not be disturbed on appeal." (*Meador v. Manlove,* supra, syl. ¶ 6.)

The judgment is affirmed.