## Sparkman et al. v. Triplett et al.

Nov. 20, 1942.

570

Carl D. Perkins and Clark Pratt for appellants.

Bailey P. Wootton, Bert T. Combs, LeRoy Combs and D. H. Hall for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Appellees' version of the facts out of which this litigation arose is as follows:

On December 10, 1926, the appellant, W. M. (William) Triplett, desiring to sell his farm containing ap-

proximately five hundred acres, conveyed the same to the appellee, John L. Triplett, for a recited consideration of $12,000 cash, of which only $6,000, and that some months later, was paid. The grantor and grantee were brothers and had been closely associated in business for many years. John is the elder, and, at the time of the conveyance, was sixty-three years of age. On April 9, 1930, John and his wife re-conveyed the property to William for a recited consideration of $7,000 cash. William, without John's consent, had invested the $6,000 previously paid him by John in certificates issued by a building and loan association in Denver, Colorado, and, in response to frequent requests from John for a return of his money, plus an agreed rate of interest, caused the certificates to be re-issued, one to John for $4,969.80 and one to John's wife, Arminty, for $2,484.90. These amounts did not represent the cash value of the certificates which, according to their terms, could have been surrendered for cash at any time, but the amounts, including an excessive rate of interest, which the association undertook to pay the holders if the certificates were allowed to mature, that is, after the lapse of five years from their date. Later, a certificate for $536 issued to William was transferred by him to John, John's daughter having discovered that the two certificates issued to John and his wife did not represent an investment of the entire $6,000. All of the parties were under the impression that the certificates could not be cashed until the expiration of the five-year period, and accordingly the money was allowed to remain with the building association which, in 1934, became insolvent and was placed in charge of the State Commissioner for liquidation. As a result, only $917.59 was realized on the certificates, and that, after the institution of this litigation. We quote the following from John's testimony relative to what was said when William offered the certificates in lieu of the money:

"A. I believe I said to him 'when would a man get his money' and he said they'd been put in there two years, a little over, and when five years run out they would pay them over. He said they'd be good that they lacked a right smart being out. He wanted me to take the certificates, I told him I was a right smart scared of them.

"Q. What did William say when you told him you were afraid of them? A. I might near forgit. I

told him if they were not good I'd look to him for my money.

"Q. You told him if they wasn't good you'd look to him to pay you? A. Yes and he claimed they'd be allright and I'd get paid as soon as the time was up, and you know, I told him if they did it would be alright but if they didn't I was looking to him for my money, the bank went in bad shape and I never got a cent.

"Q. Did you accept those certificates willingly? A. No, I accepted them if they were good and if they wasn't I was to look to him for my pay.

"Q. What did William say when you told him you were looking to him for your pay if they turned out to be worthless? A. I don't remember exactly. I guess—

"Q. Don't guess. Tell to the best of your recollection? A. He said the certificates was alright and if they wasn't he'd make them alright.

"Q. Did he say that when he delivered the certificates to you the first time? A. Yes I think so.

"Q. Said if they were worthless he'd make them good? A. Yes.

"Q. Would you have accepted them if he hadn't told you that? A. No, I was afraid of them."

By deed dated and recorded on July 1, 1930, William conveyed the real estate to his adopted daughter, the appellant, Annie Sparkman. The consideration recited in the deed was $1 and the undertaking of the grantee to maintain and support the grantor during his natural life. Actually, according to appellees, the real purpose of the conveyance was to prevent John from collecting his debt in the event the certificates, in which the money had been invested without his knowledge or consent, proved worthless.

Appellants' version is that William Triplett's conveyance of December 10, 1926, to John, although participated in by his wife as one of the grantors, was in furtherance of a plan, acquiesced in by his brother, John, and suggested by John's son, Tom, to place the property beyond the reach of William's wife with whom he had frequently quarrelled and who was threatening to sue him for divorce and alimony; that the belated payment

of the $6,000 by John to William was occasioned by Tom's subsequent suggestion that unless a part of the recited consideration was actually paid, the deed would not withstand an attack; that it was understood that William was to return the $6,000, with interest, whenever the land was conveyed back to him; and that John, after he had reconveyed the property following the death of William's wife, willingly accepted the building and loan certificates, in which the money had been invested, in full satisfaction of William's obligation to restore it. The conveyance by William to his adopted daughter was to insure her acquiring his estate without interference from his blood relatives, and the consideration moving from her was the undertaking to "keep" him during his entire life.

The Chancellor awarded appellees a judgment against William Triplett for $6,000, with interest, subject to a credit for the amount received on the certificates, set aside the deed to his adopted daughter, and directed a sale of the land in satisfaction of the implied vendor's lien, all of which relief appellees had sought in this action which was instituted by them on December 20, 1937. In disposing of the appeal from that judgment it is sufficient to say with respect to the pleadings that they contained the factual contentions heretofore outlined accompanied by the traverses necessary to join the issues, and, on behalf of the appellants, a plea of the five-year Statute of Limitations and the Statute of Frauds. With respect to the voluminous testimony, it is necessary only to note that while it conduces to the belief that appellants' version of the purposes for which the conveyance to John was made is the true one, it is, nevertheless, sufficient to support the chancellor's finding that appellees accepted the building and loan certificates as collateral security for the payment of the debt, but not in satisfaction thereof. For reasons which will hereafter become apparent, it is unnecessary for us to determine whether the deed from William to his adopted daughter was fraudulent. Appellants' plea that William Triplett had discharged his debt by transferring and delivering to appellees the building and loan certificates having been disposed of by the application of the rule that the chancellor's fact finding will not be disturbed when the proof creates no more than a doubt as to its correctness, it becomes necessary to consider the remaining grounds for a reversal urged by appellants,

which are: (1) That John Triplett, by his acquiescence and participation in William's scheme to avoid paying alimony to his wife in the event she should sue for it, is, under the "clean hands" doctrine, precluded from seeking the aid of a court of equity; (2) that the deed from William Triplett to his daughter is immune from attack because the action was not instituted within five years from the date of its recording; and (3) that any oral guarantee by William Triplett that the certificates would be paid on maturity was within the Statute of Frauds, Kentucky Statutes, Section 470. We shall discuss these contentions in the order named.

I. This ground is based as heretofore indicated upon the maxim "He who comes into equity must come with clean hands"; but the courts, neither in morals nor by precedent, are obligated to apply it when the opposing parties are not in pari delicto. Indeed, in denying relief to persons seeking to extract themselves from the results of fraudulent agreements, the courts frequently base the denial upon the maxim, "In pari delicto portior est conditio defendentis et passe dentis." In Pomeroy's Equity Jurisprudence, Vol. 2, Sect. 932, quoted with approval in the case of Breyfogle et al. v. Bowman, 157 Ky. 62, 162 S. W. 787, it is stated that one of the exceptions to the rule that the court will generally leave persons who have entered into agreements for fraudulent purposes in the position they placed themselves, is where the parties were not in pari delicto; and this condition exists where, "in the absence of any incidental and collateral circumstances, the contract is illegal, but is intrinsically unequal; is of such a nature that one party is necessarily innocent as compared with the other; the stipulations, undertakings, and position of one are essentially less illegal and blameworthy than those of the other." See, also, Cook v. Colyer's Adm'r, 2 B. Mon. 71, quoted in the Breyfogle case, in which the court said:

> "The salutary principle of equity, now urged in bar of Cook's right to relief, should not be extended beyond the reason and policy which dictated it; and it does not, therefore, necessarily apply to a case in which the defending party had himself first conceived the fraud for his own benefit, and either by his artifice or influence induced the complaining party to concur with him in the attempted conclusion."

In the case at bar, the originator of the fraudulent

device, and the only person who could have benefited thereby, was William Triplett. John's aid was merely passive, and, since he had nothing to gain, was obviously prompted by his lifelong affection for his brother. Furthermore, appellees are not seeking to rescind a fraudulent transaction in which they had participated, but to recover the money which justly became due them as the consideration for the voluntary re-conveyance of the land, a re-conveyance which could not have been compelled. In no sense were the parties in pari delicto, and to deny John a recovery of the consideration for the conveyance would, in effect, be to punish the lesser participant in the original wrong for restoring what, in bad conscience, he might have retained. See, also, the case of Blankenship et al. v. Green, 283 Ky. 700, 143 S. W. (2d) 294, in which the principles under consideration were fully discussed, and this court decreed that the grantor who had conveyed his property to another for an improper purpose, but had obtained an unacknowledged re-conveyance, was entitled to have his title quieted and to a commissioner's deed to supplant the unacknowledged deed. Accordingly, we have no hesitancy in holding that the appellees are not barred by reason of John Triplett's participation in the original conveyance from recovering the consideration for the re-conveyance.

II. It is insisted by the appellants that the recording of William Triplett's deed to his adopted daughter constituted notice to appellees of any fraud claimed to have been perpetrated by the grantor, and hence, by the terms of Kentucky Statute 2515, that an action to cancel the deed on the ground of fraud instituted more than five years after the recording of that deed came too late. On the other hand, it is insisted by the appellees that they did not obtain actual notice of the deed and could not have done so by the exercise of ordinary diligence until a date within the five-year period preceding the institution of the action, and, accordingly, by the provisions of Section 2519, Kentucky Statutes, the action was timely. Both parties cite decisions of this court in support of their views. It may be remarked that the naked question whether the mere recording by a debtor of a voluntary conveyance for the purpose of defrauding his creditor constitutes notice to the latter and starts the running of the five-year statute does not appear to have been finally disposed of in this State. Elkhorn Coal Corporation v. Hite et al., 225 Ky. 735, 9 S. W. (2d) 1083. Nor

is it necessary to decide it here, since the implied vendor's lien to secure the payment of the consideration for the conveyance to William Triplett was enforceable against the land in the possession of all persons not bona fide purchasers from William; and the sole consideration for his transfer to his adopted daughter having been her undertaking to support him during his life, she is not within that category, however innocent of fraudulent intent or knowledge of fraud she may have been. That the vendor's lien existed, notwithstanding the fact that the deed from John Triplett to William recited that the consideration of $7,000 and other valuables had been paid, is thoroughly established by the construction of and effect given by this court to Section 2358, Kentucky Statutes, which provides that when the consideration, or any part thereof, for the conveyance of real estate remains unpaid, the grantor shall not have a lien for same against bona fide creditors and purchasers, unless it is stated in the deed what part of the consideration remains unpaid. Blevins v. Blankenship, 7 S. W. 175; Brown v. Ferrell, etc., 83 Ky. 417; Pace v. Berry et al., 176 Ky. 61, 195 S. W. 131; Jackson v. Engle et al., 230 Ky. 558, 20 S. W. (2d) 460; Ford et al. v. Ford's Ex'r, 233 Ky. 673, 26 S. W. (2d) 551; Uppington et al. v. Cooper, 279 Ky. 305, 130 S. W. (2d) 733. Substantiating our view that William's adopted daughter was not a bona fide purchaser within the meaning of the Statute, and consequently that the land was subject to the lien irrespective of her knowledge or motive in accepting the conveyance, we cite the following cases: Falk v. Fulton, 124 Kan. 745, 262 P. 1025; Dow v. Jewell, 18 N. H. 340, 45 Am. Dec. 371; Woodall v. Kelly, 85 Ala. 368, 5 So. 164. It is not contended that the acceptance by appellees of collateral security for the payment of the consideration constituted a waiver of the implied vendor's lien. Indeed, it could not have been successfully so contended in view of our decision in the case of Bradley v. Curtis, etc., 79 Ky. 327. Hence, the only question of limitation necessary to be determined is whether appellees' cause of action to recover the debt itself is barred. If it is, the lien, which is co-extensive with and dependent upon it for vitality, is also barred and the action is at an end. If the debt is not barred, the lien is enforceable and affords a complete remedy.

The deed contained no promise to pay, but, in effect, negatived the existence of such a promise. No other

writing was executed between the parties, from which it follows that appellees' action to recover the consideration was necessarily founded upon an implied, or, at most, a verbal contract. Therefore, the applicable statute of limitation was Section 2515, which provides among other things that an action upon a contract not in writing, express or implied, must be commenced within five years next after the cause of action accrued. Prewitt v. Wortham, 79 Ky. 287; Warning's Ex'r v. Tabeling et al., 280 Ky. 232, 133 S. W. (2d) 65. It is not contended by William Triplett that he did not promise to pay the consideration for the re-conveyance, or that he was not obligated to do so. His sole contention in this connection is that he did pay it by transferring and delivering the building and loan certificates. In the absence of an agreement to the contrary, payment became due on the date the deed was delivered—more than five years prior to the institution of the action. But the chancellor believed John Triplett's testimony heretofore quoted, and predicated thereon his finding that the building and loan certificates were accepted as collateral security for the payment of the consideration, and not in satisfaction of it. While the authorities are in conflict as to whether the mere acceptance by a creditor of collateral security extends the period in which an action to recover from his debtor may be instituted, a question we deem it unnecessary to decide, it is obvious that an undertaking between a creditor and his debtor, such as John testified conditioned his subsequent acceptance of the building and loan certificates, namely, that the debtor would be released only if and when the collateral was realized on, operated to postpone the accrual of the original cause of action to such time as the collateral proved valueless. The building and loan association which issued the certificates did not default in its undertakings until a date within the five-year period preceding the institution of the action, from which it follows that appellants' plea of limitations is unavailing.

III. If appellees had accepted the certificates in payment of the consideration for the conveyance, and William Triplett, after being thus released, had, as an independent undertaking, verbally guaranteed that the building and loan association would pay the certificates at maturity, and this was an action to recover on such guarantee, appellants' defense based upon the Statute of Frauds would have merited serious consideration. But

neither in form nor in substance does this action involve facts of the nature hypothesized. On the contrary, it is an action to compel the satisfaction by William Triplett of his own peculiarly moral, as well as legal, obligation to pay to his brother the promised and just consideration for the restoration of his property.

It is stated in brief that subsequent to the entry of the judgment appealed from, appellees have received additional payments on the building and loan certificates which, if the judgment is affirmed, should be applied as credits thereon. If such payments have been made, doubtless they will be accounted for in the final settlement between the parties. If not, William Triplett, clearly, would be entitled to recover them by appropriate legal proceedings.

Judgment affirmed.

Whole Court sitting.