267 P.2d 730

**ALEXANDER et al. v. O'NEIL et al.**
**No. 5681.**

Supreme Court of Arizona.
March 8, 1954.

Rehearing Denied May 18, 1954.

William C. Eliot, Ronald Webster, Jr., Phoenix, for appellants.

Kramer, Morrison, Roche & Perry, Phoenix, for appellees T. R. O'Neil and Doris O'Neil.

Gibbons & Kinney, by Ed. W. Hughes, Phoenix, for appellees 'Janie F. Northington and Jonas Northington.

UDALL, Justice.

The primary question presented by this appeal relates to the rights of parties under the recording act, Section 71–423, A.C.A. 1939. Plaintiff Marcelious Alexander claims under an unrecorded deed prior in execution, and defendant T. R. O'Neil claims under a deed prior in registry. Plaintiff's unrecorded conveyance (which for purposes of this appeal is agreed not to be a forgery) is declared by the statute, supra, to be void as against O'Neil, providing the latter was a "purchaser for valuable consideration without notice".

The essential facts, which are somewhat involved, are as follows: William Solly, a Negro minister, and his wife Annie Solly, were residents of Phoenix and owned property here. The aged couple had no children of their own, so they, at the instigation of one Grover Cleveland Dobbs, who seemed to be the moving factor in the various transactions hereinafter set forth, on October 20, 1933 purportedly executed a warranty deed to one Marcelious Alexander, a seventeen-year-old nephew of William Solly, then and at all times since a resident of Mississippi. The deed conveyed the following property, viz.:

Parcel 1. Lot 7 Block 29, Original Townsite of Phoenix (then and now known as the St. Louis Hotel property).

Parcel 2. Lot 3 Block 9, Collins Addition to the City of Phoenix (now known as the Mack and Annie Goins property).

Parcel 3. Lot 4 Block 9, Collins Addition to the City of Phoenix (now known as the Janie and Jonas Northington property). A life estate was reserved to the grantors in all three parcels. Dobbs declares the original intention of the grantors was that Alexander should hold the real property in trust for other blood relatives of William Solly. The deed was not recorded until October, 1948, but instead was given into the possession of Dobbs, who took it to his home in the State of Mississippi.

On October 4, 1944, William Solly died, testate, naming his wife executrix and sole beneficiary of his will. His estate, which was appraised at $12,650, was probated in the Superior Court of Maricopa County. Annie Solly, being illiterate, could not qualify as executrix, and she named T. R. O'Neil, who was duly appointed administrator c. t. a. On December 24, 1945, the estate was closed, the administrator discharged, and a decree of distribution entered distributing to Annie Solly the entire estate, consisting of the three parcels heretofore described, and Lot 19, Block 15, Irvin's Addition to the City of Phoenix (now known as the Milton and Laura Long property). There was insufficient cash in the estate to pay O'Neil the $1964 due as administrator's fee, or the $151 due for attorney's fees, hence a lien was impressed on all the property distributed to Annie

Solly. Immediately following this the claim and lien of attorneys was assigned to O'Neil. In probating this estate no recognition was taken of the unrecorded deed to Alexander.

T. R. O'Neil for many years past has been a porter and elevator operator at the First National Bank in Phoenix. He first met the Sollys when he moved to Phoenix in 1930, at an approximate age of twenty-four years. O'Neil became a tenant of Sollys' at the St. Louis Hotel property, and has resided there since. He was a "handyman" around the place, and the Sollys became very much attached to him as he took more and more of the load off their shoulders. Eventually they both referred to him as "son" and called his children their "grandchildren". Shortly after Mr. Solly's death, Annie Solly executed a will (revoked by a later will) leaving all her property to O'Neil. Thereafter, on March 28, 1946, Annie Solly executed and delivered to T. R. O'Neil the quitclaim deed here in question, conveying to him the four parcels of realty distributed to her under the decree of distribution of her husband's estate. The consideration recited in the deed was $10, but the grantee admits this was not paid. Accompanying this, she executed and delivered to O'Neil a bill of sale to the personal property in the St. Louis Hotel. The next day this deed and bill of sale were placed of record with the county recorder of Maricopa County. Thereafter Annie Solly remained in her usual room in the hotel, and O'Neil assumed full control and management of the property, paying to Annie Solly $125 a month from the income thereof, and caring for her until her death.

On November 19, 1947, Annie Solly was nearly ninety years of age, decrepit, hard of hearing and bedridden. On this date she executed her last will, naming Marcelious Alexander her sole devisee and legatee. She purported to leave to him the same four parcels theretofore conveyed to O'Neil, and in this will it was expressly stated that O'Neil got her property by "some kind of a trick" and that she had "never intended that he should have any of our property through gift or otherwise." On January 10, 1948, Annie Solly died. Her will was admitted to probate, and on October 3, 1950, Dobbs was appointed administrator thereof.

Prior to the commencement of the two lawsuits here involved, the following transfers were made, in addition to the conveyances heretofore set forth.

Parcel No. 1 (The hotel property, Lot 7 Block 29)

December 24, 1948, Marcelious Alexander et ux. convey to Mack and Annie Goins.

Parcel No. 2 (Lot 3 Block 9, Collins Addition)

January 2, 1948, O'Neil et ux. convey to Mack and Annie Goins. The latter are relatives of William Solly. The conveyance is made at the behest of Dobbs, and no monetary consideration moves directly to the grantor.

96

### Parcel No. 3 (Lot 4 Block 9, Collins Addition)

January 2, 1948, O'Neil et ux. convey to Janie and Jonas Northington. The latter are relatives of William Solly. The conveyance is made at the behest of Dobbs, and the purchase price of $1,000 is paid to him by the grantee, to hold for the benefit of the relatives of William Solly. December 24, 1948, Alexanders convey to Mack and Annie Goins.

### Parcel No. 4 (Lot 19 Block 15, Irvin's Addition)

May 31, 1946, O'Neil et ux. convey to Milton and Laura Long, the latter not being parties to the suits and hence Longs' title to this parcel is not in question.

### Action No. 63803 (Alexander suit)

■ On June 24, 1949, Alexander and Goins (joined by their wives) filed a complaint in this cause against O'Neil, et ux. and Northington, et ux., asking for damages and that their title be quieted to Parcels Nos. 1 and 3. O'Neils by their answer set up numerous defenses both legal and equitable, and by counterclaim asked that their title be quieted in and to Parcel 1. Defendants Northington similarly answered, and asked that their title be quieted in and to Parcel 3. Since there was a conflict of evidence on the issue whether the defendants had notice of the unrecorded deed, we are bound to take it that the trial court concluded that they did not.

### Action No. 67707 (Dobbs suit)

On October 21, 1950, Dobbs, as administrator with the will annexed of the estate of Annie Solly, deceased, filed a three-count complaint, naming O'Neil et ux. as defendants, seeking to have the Solly-O'Neil quitclaim deed of March 28, 1946, covering parcels one to four, declared of no further force and effect, and asking for an accounting.

### Northingtons

■ The judgment for Northingtons must be affirmed, for clearly they were purchasers for value without notice. They were the actors in a transaction of bargain and sale, paying money for the quitclaim deed made to them. Thus they gave what the law esteems a present equivalent for the grant, and this constitutes *value* as that term is understood in the recording acts. Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 3, Secs. 735–751. Cf. the excellent treatment of this problem in Ten Eyck v. Whitbeck, 135 N.Y. 40, 31 N.E. 994, 31 Am.St.Rep. 809. Whether their grantor O'Neil was or was not a purchaser for value is not material to their rights so long as they had no notice of defects in their grantor's title, and did give value for the conveyance, which was made to them prior to the recordation of the 1933 Solly-Alexander deed. Furthermore, the fact that their deed from O'Neil was quitclaim in form in nowise precludes them from asserting that they were bona fide purchasers for a valuable consideration in good faith.

See, Phoenix Title & Trust Co. v. Old Dominion Co., 31 Ariz. 324, 253 P. 435, 59 A.L.R. 625.

### O'Neils

■ O'Neil claims the protection of the recording act, Section 71–423, supra, as a purchaser for valuable consideration. While all who take realty otherwise than by descent are "purchasers", still the recording acts have a more limited application and refer to those who enter into a contract of purchase. There is in the record no direct evidence or testimony of an express contract of purchase and sale between Annie Solly and O'Neil. The record does reveal that a conveyance was made, and the grantee O'Neil subsequently conferred a benefit upon the grantor, Mrs. Solly, in that he supported her during the last years of her life and paid her the sum of $125 a month from the income accruing from his management of the property conveyed. The testimony from O'Neil's own lips regarding this transaction is as follows:

"Q. Now those are the properties that you state Annie Solly gave you by that deed as your own? (referring to Parcels 1–4) A. Yes.

"Q. For you to have it after she died? A. Yes, she gave me all the property that we had in charge there.

"Q. Did you pay her anything for them? A. Just in cash, no, but I did in service and by attorney, and my ad-ministration fee, you know, what I would get over to her.

"Q. In other words, you credited $1900 that she owed you? A. Yes.

"Q. And how much did you give her a month? A. I give her $125 a month.

"Q. $125 a month? A. Yes."

### (a) Express Contract

It is argued that this proof of mutual benefits conferred is circumstantial proof of an express contract to convey the realty. That is, appellee contends that from this showing of mutual benefits a reasonable mind may logically infer the existence of a prior express contract wherein the parties agreed to act as they did. An express contract is ordinarily thought of as an actual agreement reached by parties who have openly uttered or declared the terms thereof at the time of making it, either orally or in writing. The fundamental requisites of such a contract are an offer, an acceptance, a meeting of the minds, and a quid pro quo. In the case at bar we are asked to rule that these elements may all be inferred from proof of a benefit conferred by one person upon another, but, the very facts relied upon to establish a contract fit equally well, if not better, the theory of reciprocal gifts. Thus the conclusion there was a contract rather than a gift rests in speculation and conjecture, and cannot be reached by logical processes from the established facts. We therefore hold the evidence insufficient

to establish a prima facie showing of an express contract.

### (b) Implied Contract

It is also argued that the proof of mutual benefits conferred is proof of an implied contract. An implied contract is one not created or evidenced by explicit agreement, but inferred by the law as a matter of reason and justice from the acts and conduct of the parties and circumstances surrounding their transaction. In Kellogg v. Gleeson, 27 Wash.2d 501, 178 P.2d 969, the court pointed out the settled rule that the burden of proving an express or implied contract is upon the party asserting it, and he must prove each fact essential thereto, including the existence of mutual intention. The Washington court was there faced with the bare fact of a benefit conferred, and was asked to say the law will from this circumstance alone raise up a promise on the part of the party benefited to pay therefor. It was held no such conclusion could be reached because the facts relied upon to establish the agreement were entirely consistent with the hypothesis that no such agreement existed. We believe such a decision to be sound, and hold that upon the facts presented in the instant case the law will not raise up a promise upon the part of either O'Neil or Annie Solly. Cf. the reasoning in Ward v. United States, 8 Cir., 158 F.2d 499, certiorari denied 67 S.Ct. 1535, 331 U.S. 844, 91 L.Ed. 1854.

It is likewise argued that O'Neil's release of lien filed of record July 16, 1946, both evidences a contract and furnishes the consideration therefor. It must be remembered that the claims aggregating $2,115 upon which these liens were founded constituted an indebtedness due from the William Solly estate, and at no time were these items the personal obligation of Annie Solly. These claims were a charge against the real estate owned by her, but were not her debts. Appellee's argument thus ignores the fact that at the time the liens were ostensibly "released" the lesser estates would have already merged with the greater, and the benefit flowing to the grantor from the grantee's formal clearance of his own record title is difficult to perceive. To labor it further, appellee's argument is refuted by the same reasoning that applies to the contentions about the agreement to support.

A party claiming protection of the recording act, Section 71–423, supra, to defeat an unrecorded conveyance, must prove not only that he is a purchaser but also that he gave for the conveyance what the law deems *value* in a more technical sense than that used in the law of contracts. The problem of valuable consideration for simple contracts was considered by us in Federal Rubber Co. v. Pruett, 55 Ariz. 76, 98 P.2d 849, 126 A.L.R. 1238, and Sapp v. Lifrand, 44 Ariz. 321, 36 P.2d 794. In the recording acts the words "valuable consideration" are used in contradistinction from valid or sufficient consideration between vendor and purchaser. In 55 Am.Jur., Vendor and Purchaser, Section 736, it is stated:

"* * * A valuable consideration may consist of the surrender of some right, or a change of legal position to the detriment of the purchaser, so that if the claim of title fails the purchaser is left in a worse position than he was before."

It was held in the case of Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78, 82, that:

"'* * * one who takes title as a mere volunteer is not entitled to protection as a bona fide purchaser for value, * *' *.'"

The law is also well settled that a nominal consideration does not constitute a valuable consideration within the meaning of the recording statute, Morris v. Wicks, 81 Kan. 790, 106 P. 1048, 26 L.R.A.,N.S., 681, 19 Ann.Cas. 319, and, while love and affection is a good consideration, it is not a valuable consideration. Gardiner v. Gardiner, 36 Idaho 664, 214 P. 219, and 55 Am.Jur., Vendor and Purchaser, Section 740. In 55 Am.Jur., Vendor and Purchaser, Section 741, it is stated:

"A conveyance in consideration of the future support of the grantor for life, although a good consideration in the ordinary sense, is not such a valuable consideration as will entitle the grantee to protection as against secret equities binding the land in the hands of the grantor. * * *."

We have examined the cases of Falk v. Fulton, 124 Kan. 745, 262 P. 1025; Spark-man v. Triplett, 292 Ky. 569, 167 S.W.2d 323; and Kelly v. Grainey, 113 Mont. 520, 129 P.2d 619, and find them to be sound authority for this proposition. It is therefore apparent the judgment for O'Neil cannot be sustained upon the theory that he was a purchaser for value. He gave nothing the law will deem a present equivalent for the grant, and hence could not avail himself of the protection of the recording act.

By a cross-assignment of error and several propositions of law there is set forth in the brief of appellee O'Neil a contention that the lower court erred early in the case in failing to grant a motion for summary judgment after defendants' request for admission of facts had allegedly gone unanswered. It should be noted that the plaintiffs during a part of this time had no attorney of record. However, by stipulation the time for response to the request for admissions was extended. The exact date to which it was extended, and the parties with whom the stipulation was made, became the subject of conflicting affidavits, and the lower court's ruling on this fact issue, in favor of plaintiffs, formally granting them additional time in which to answer, cannot be upset without re-trying the facts. The answers when filed were not objected to as insufficient to meet the requirements of Rule 36(a) Rules Civil Procedure, Section 21–739 A.C.A.1939, hence that argument cannot be urged upon appeal. We hold there was no error in denying the motion for summary judgment.

Summary

The lower court's judgment in favor of the Northingtons is affirmed. The judgment in favor of O'Neil is reversed and the cause is remanded for trial on the reserved issue of forgery. If the final judgment is that O'Neil is not the owner of the lots, his lien should be re-established.

Affirmed in part; reversed in part.

PHELPS, C. J., STANFORD and LA PRADE, JJ., and DONOFRIO, Superior Court Judge, concur.

WINDES, J., being disqualified, the Honorable FRANCIS J. DONOFRIO, Judge of the Superior Court of Maricopa County, was asked to sit in his stead and assisted in the determination of this appeal.