227 P.3d 504

**WILSHIRE INSURANCE COMPANY, a foreign corporation, Plaintiff/Appellee,**

v.

**S.A., Defendant/Appellant.**

**No. 1 CA–CV 09–0170.**

Court of Appeals of Arizona, Division 1, Department D.

March 23, 2010.

Jones Skelton & Hochuli, PLC By Edward G. Hochuli, Kevin K. Broerman, Phoenix, Attorneys for Plaintiff/Appellee.

Lorona Steiner Ducar, LTD By Leslie L. Rakestraw, Phoenix, Co–Counsel for Defendant/Appellant.

Law Offices of David L. Abney, By David L. Abney, Phoenix, Co–Counsel for Defendant/Appellant.

## OPINION

JOHNSEN, Judge.

¶ 1 A business owner locked a 15–year–old girl in the company's basement and sexually assaulted her over a two-hour period. She later sued him for damages, but his insurance company denied coverage. The question we address is whether the business owner's commercial general liability insurance policy covered the victim's claims. Because we are bound by precedent to interpret the insurance contract consistent with the public policy that bars insuring against the consequences of intentionally wrongful conduct, we affirm the superior court's entry of summary judgment in favor of the insurer.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Wilshire Insurance Company issued a policy insuring Tyrone Nelson and his wife and a commercial glass company they owned in Glendale. Nelson committed the assault described above during the policy period. He pled guilty to one count of sexual assault and two counts of attempted sexual assault and was sentenced to 14 years in prison. The victim filed a civil complaint against Nelson and his business that alleged false imprisonment.[1] After Wilshire denied coverage, the victim settled with Nelson and accepted an assignment of his bad-faith claim against the insurer. Wilshire then filed a complaint seeking a declaratory judgment that its policy did not cover the victim's claims. The victim responded and counterclaimed, seeking an order that coverage existed. The superior court eventually entered summary judgment in favor of Wilshire pursuant to Arizona Rule of Civil Procedure 54(b).

¶ 3 The victim filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B)(2003).

1. We modify the caption of this appeal to identify

## DISCUSSION

### A. Standard of Review.

¶ 4 Summary judgment shall be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). On review from a grant of summary judgment, we determine *de novo* whether the non-moving party established any genuine issues of material fact and whether the court properly applied the law. *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15, 165 P.3d 173, 177 (App.2007).

### B. The Wilshire Policy.

¶ 5 The victim argues her claims fell within Part I.B of the policy, which provided coverage for "personal and advertising injury liability." In relevant part, the policy stated:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies....

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

\* \* \*

(4) Arising out of a criminal act committed by or at the direction of any insured;

\* \* \*

SECTION V—DEFINITIONS

the plaintiff-victim only by her initials.

\* \* \*

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment.

## C. The Victim's Claim Falls Within the Criminal–Act Exclusion.

¶ 6 The interpretation of an insurance contract is a question of law we review *de novo. First Am. Title Ins. Co. v. Action Acquisitions, LLC,* 218 Ariz. 394, 397, ¶ 8, 187 P.3d 1107, 1110 (2008). "If a clause appears ambiguous, we interpret it by looking to legislative goals, social policy, and the transaction as a whole." *Id.* We construe the clause against the insurer, however, if ambiguity remains after we apply those interpretive guides. *Id.*

¶ 7 The victim argues her damage claims assert "personal and advertising injury" "caused by an offense," within the meaning of subparts 1.a and 1.b of the Coverage B insuring agreement. As support, she points out that the policy defines "personal and advertising injury" to include "injury arising out of ... [f]alse arrest, detention or imprisonment." For its part, Wilshire contends there is no coverage because the claim falls within the exclusion of an injury "[a]rising out of a criminal act committed by or at the direction of the insured." [2]

¶ 8 The victim asserts the criminal-act exclusion does not apply to her claim for false imprisonment. She notes that subpart 1.b of the Coverage B insuring agreement states that coverage will be afforded for a claim for "injury caused by an offense," and argues the policy's use of that phrase necessarily contemplates coverage of "injury caused by" at least some criminal acts. As the victim argues, the word "offense" means "[a] violation of the law; a crime." Black's Law Dictionary 1110 (8th ed.2004). Our criminal code likewise defines "offense" to mean "conduct

for which a sentence to a term of imprisonment or of a fine is provided." A.R.S. § 13–105(26) (Supp.2009).

¶ 9 The victim also argues that when a contract contains a specific provision that appears to conflict with a general provision, the usual interpretive rule is that the specific provision controls. *See Technical Equities Corp. v. Coachman Real Estate Inv. Corp.,* 145 Ariz. 305, 306, 701 P.2d 13, 14 (App.1985) ("specific provisions of a contract qualify the meaning of a general provision"); *see also Midland Risk Mgmt. Co. v. Watford,* 179 Ariz. 168, 171, 876 P.2d 1203, 1206 (App.1994) (more specific statute controls over conflicting general statute); *United Cal. Bank v. Prudential Ins. Co. of Am.,* 140 Ariz. 238, 274, 681 P.2d 390, 426 (App.1983) (specific typewritten provisions control over conflicting more general printed provisions). Applying this principle, she contends that even though the policy contains a general exclusion of coverage for damages "arising out of a criminal act," that exclusion is trumped by the policy's specific grant of coverage for injury "arising out of ... false arrest, detention or imprisonment." Thus, the victim argues, although the policy generally may exclude coverage for injury arising from criminal acts, that exclusion does not apply to injury arising from false imprisonment.

¶ 10 When contract provisions appear to contradict each other, we try to "harmonize all parts of the contract ... by a reasonable interpretation in view of the entire instrument." *Brisco v. Meritplan Ins. Co.,* 132 Ariz. 72, 75, 643 P.2d 1042, 1045 (App. 1982). We agree that the Wilshire policy's grant of coverage for injury caused by an "offense" may imply an agreement to cover injury from a crime, an implication further supported by the policy language defining "personal and advertising injury" to include injury from false imprisonment. But our supreme court has instructed that insurance contracts must be construed consistent with the public policy that "forbids contracts in-

---

**2.** Wilshire argues in the alternative that the claim is excluded by a provision barring coverage for "[p]ersonal injury caused by or at the direction of the insured with the knowledge that

the act would violate the rights of another and would inflict personal injury." Because we conclude the criminal-act exclusion bars coverage, we need not address this exclusion.

demnifying a person against loss resulting from his own willful wrongdoing." *Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 356, 694 P.2d 181, 186 (1984); *see also Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.,* 165 Ariz. 31, 35, 796 P.2d 463, 467 (1990).

¶ 11 The issue in *Meere* was whether an insurance contract that excluded intentional injury covered damages inflicted by an insured acting in self defense. *Id.* at 354, 694 P.2d at 184. The court observed that the public policy against insuring against one's own wrongdoing "is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will 'pay the piper' for the damages." *Id.* at 356, 694 P.2d at 186.[3] The court relied in part on that policy in interpreting the intentional-injury exclusion to bar coverage of injury caused "when the insured intentionally acts *wrongfully* with a purpose to injure." *Id.* at 359, 694 P.2d at 189. The court remanded for a determination of whether the insured's acts were privileged by self defense such that he lacked "an underlying purpose to injure." *Id.* The court concluded: "The basic question is whether the conduct which led to the blow was intentionally wrongful from the viewpoint of the law of torts." *Id.*

¶ 12 At issue in *Phoenix Control Systems* was whether coverage for damages caused by a wrongful use of protected software was barred by an intentional-act exclusion. The court cited *Meere* for the proposition that public policy restricts insurers from "indemnifying a person for his own wil[l]ful wrongdoing." 165 Ariz. at 35, 796 P.2d at 467. Consistent with that policy, an exclusion of coverage for intentional acts applies to an act "committed for the purpose of inflicting injury or harm." *Id.* The insurance policy in that case, like the Wilshire policy here, covered some "torts which essentially involve intentional acts that may cause injury." *Id.* at 36, 796 P.2d at 468 (noting coverage for false imprisonment, a tort requiring intent to confine) (citing Restatement (Second) of Torts § 35 (1965) ).

¶ 13 Significantly for our purposes, the court warned that the intentional-act exclusion "must be construed narrowly so that the exclusion for intentional acts does not totally eliminate the coverage for intentional torts." *Id.* Reasoning by analogy to the policy's coverage of damages arising from false imprisonment, the court explained:

> In this case, the fact that the insured intended to use the copyrighted material should no more place his act under the intentional acts exclusion than if he intended to confine an individual and was later found to have acted wrongfully. The question must be, as it was in *Meere* ..., whether the insured intentionally acted wrongfully or whether his intentional act unintentionally resulted in wrongful conduct.

*Id.* Applying that principle, the court in *Phoenix Control Systems* held that although the insured intentionally had used the software at issue, whether coverage was barred by the intentional-act exclusion hinged on whether the insured intended to cause harm by using protected intellectual property. *Id.* at 37, 796 P.2d at 469; *see also Fire Ins. Exch. v. Berray,* 143 Ariz. 361, 363, 694 P.2d 191, 193 (1984) (coverage question requires "determination of the basic purpose or desire underlying the insured's conduct").

¶ 14 We apply the same principle in construing the criminal-act exclusion in the Wilshire policy. The victim points out that, as the *Phoenix Control Systems* court noted, the tort of false imprisonment requires an intentional act, and argues that for that reason, tortuous false imprisonment necessarily constitutes a crime. *Compare* Restatement (Second) of Torts § 35 (one is subject to liability for false imprisonment if "he acts intending to confine the other") *with* A.R.S. § 13–1303(A) (2001) ("person commits unlawful imprisonment by knowingly restraining another person"). The victim argues the criminal-act exclusion in the policy should not be construed to bar coverage for false imprisonment because in that event, Wilshire's

---

**3.** The court noted that the public policy it applied was consistent with the principle that "an insured seeks the safety of insurance against risks that are outside his control and the insurer agrees to cover for a premium based on actuarial calculations of the random occurrence (risk) of such events in a given population." 143 Ariz. at 355–56, 694 P.2d at 185–86.

promise to cover damages from false imprisonment would be rendered illusory. *See Anderson v. Country Life Ins. Co.,* 180 Ariz. 625, 634–35, 886 P.2d 1381, 1390–91 (App. 1994) ("illusory" coverage "contravenes public policy"); *Ranger Ins. Co. v. Phillips,* 25 Ariz.App. 426, 433, 544 P.2d 250, 257 (1976) (exclusion should not be interpreted so as to render coverage null).

¶ 15 The principle that language in an insurance policy should not be interpreted so that coverage is rendered illusory is served by construing the criminal-act exclusion "narrowly so that [it] does not totally eliminate the coverage for intentional torts." *Phoenix Control Systems,* 165 Ariz. at 36, 796 P.2d at 468. We do not render the Wilshire policy an illusion, however, by construing its criminal-act exclusion to bar coverage of the injuries Nelson inflicted on the victim. Nelson pled guilty to a series of horrific acts committed during his two-hour assault on the victim in the basement of his glass company. In restraining her in that fashion, there is no dispute that he purposefully acted wrongfully, rather than, in the language of *Phoenix Control Systems,* committed an "intentional act [that] unintentionally resulted in wrongful conduct." *Id.*

¶ 16 Focusing on the purpose of the insured's act, our supreme court suggested in *Phoenix Control Systems* that coverage of a claim for false imprisonment would not be barred by an intentional-act exclusion if the insured "intended to confine an individual and was later found to have acted wrongfully." *Id.; see also Meere,* 143 Ariz. at 359–60, 694 P.2d at 189–90 (intentional-act exclusion would not bar coverage for injury if insured acted in self defense but negligently used force greater than necessary). But we are not presented in this case with a false-imprisonment claim brought, for example, by a customer detained by a store security guard who unreasonably suspected the customer was shoplifting. *See* A.R.S. §§ 13–1805(C) (Supp.2009) (merchant may detain "with reasonable cause" and "in a reasonable manner" a person suspected of shoplifting); 13–1303(B)(1) (peace officer not guilty of unlawful imprisonment if he acts "in good faith in the lawful performance of his duty"). The record in this case makes plain that, in the language of *Phoenix Control Systems,* Nelson "intentionally acted wrongfully" rather than committed an "intentional act unintentionally result[ing] in wrongful conduct." 165 Ariz. at 36, 796 P.2d at 468.

¶ 17 The victim argues that the policy forbidding one from insuring against his own wrongful conduct should not apply in a case such as this, in which there is no evidence that Nelson purchased the insurance to protect himself and his family against a tort claim that might be brought by the victim of a vicious crime he intended to commit. But the cases applying the policy do not limit it to circumstances in which one might conclude that the insured's decision to purchase insurance was calculated to protect against the financial risk of committing a crime.

¶ 18 As the victim argues, Arizona has established a public policy in favor of protecting the rights of victims of criminal wrongdoing to receive compensation for their injuries. *See, e.g.,* Ariz. Const. art. 2, § 2.1 (Victims' Bill of Rights); *State v. Draper,* 162 Ariz. 433, 440, 784 P.2d 259, 266 (1989).[4] She contends that public policy overrides the public policy against permitting one to insure himself against civil damages for the consequences of a crime. She cites in support *St. Paul Fire & Marine Ins. Co. v. Asbury,* 149 Ariz. 565, 720 P.2d 540 (App.1986), in which this court upheld coverage under a professional negligence insurance policy of damages caused by a gynecologist's "intentional and improper manipulation" of several of his patients. We observed in that case that

it is unlikely that the insured was induced to engage in the unlawful conduct by reliance upon the insurability of any claims arising therefrom or that allowing insurance coverage here would induce future similar unlawful conduct by practitioners. Nor does it appear that the policy was obtained in contemplation of a violation of the law .... In this instance, there is

---

4. "To preserve and protect victims' rights to justice and due process, a victim of crime has a right ... [t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. 2, § 2.1(A)(8).

great public interest in protecting the interests of the injured party.

*Id.* at 567, 720 P.2d at 542 (quoting *Vigilant Ins. Co. v. Kambly,* 114 Mich.App. 683, 319 N.W.2d 382, 385 (1982)).

¶ 19 We cannot conclude, however, that the policy favoring compensation of crime victims that we cited in *Asbury* overrides the public policy the supreme court relied upon in *Meere* and *Phoenix Control Systems,* even when the crimes are as horrific as Nelson's. In *Asbury* we did not address the intentional-act exclusion the supreme court analyzed in *Meere,* nor did we even acknowledge the existence of our supreme court's decision in that case. Likewise, no exclusion of coverage for criminal acts was at issue in *Asbury.*

¶ 20 Our supreme court set out in *Meere* and *Phoenix Control Systems* an absolute prohibition of coverage when an insured acts wrongfully and with a purpose to inflict injury. The court did not consider in *Meere* or *Phoenix Control Systems* any competing public policy favoring compensation of crime victims; both cases were issued prior to enactment of the Victims' Bill of Rights. Unless and until the supreme court decides to refine the rule it established in those cases, however, we may not decline to apply the rule in a case such as this, in which the insured indisputably acted wrongfully and with intent to injure. *See City of Phoenix v. Leroy's Liquors, Inc.,* 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993) ("[W]e are bound by decisions of the Arizona Supreme Court and have no authority to overrule, modify, or disregard them.").

**D. The Coverage Determination Disposed of the Victim's Claim for Breach of the Duty of Good Faith.**

¶ 21 In her counterclaim against Wilshire, the victim also alleged Wilshire breached its duty of good faith and fair dealing by refusing to defend and indemnify Nelson against her claims. She argues on appeal that the bad-faith claim survived the superior court's determination that the Wilshire policy provided no coverage for her false-imprisonment claim.

¶ 22 In its minute entry granting summary judgment to Wilshire on the coverage question, the court stated, "there are no remaining issues to be litigated in this case." Nevertheless, the judgment it entered recited that, pursuant to Arizona Rule of Civil Procedure 54(b), there is "no just reason for delay." Regardless of the court's reference to Rule 54(b), which normally would imply the existence of claims remaining to be tried, under these circumstances the victim's bad-faith claim did not survive the court's ruling that the Wilshire policy did not cover her damages. *Manterola v. Farmers Ins. Exch.,* 200 Ariz. 572, 579, ¶ 20, 30 P.3d 639, 646 (App.2001).

**CONCLUSION**

¶ 23 For the reasons stated above, we affirm entry of judgment in favor of Wilshire on the complaint and the counterclaim. We grant Wilshire its costs of appeal contingent on its compliance with ARCAP 21. Although Wilshire asks for its attorney's fees on appeal, it cites no legal authority in support of its application, which we therefore deny. *See Fid. Nat. Title Co. v. Town of Marana,* 220 Ariz. 247, 251, ¶ 17, 204 P.3d 1096, 1100 (App.2009).

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and JON W. THOMPSON, Judge.