NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

JAIME SHURTS, *Petitioner/Appellant,*

*v.*

RONALD L. SHURTS, *Respondent/Appellee.*

No. 1 CA-CV 13-0509

FILED 10-28-2014

Appeal from the Superior Court in Maricopa County
No. FN2011-002075
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Cavanagh Law Firm, PA, Phoenix
By Christina S. Hamilton, William F. Begley
*Counsel for Petitioner/Appellant*

Fromm, Smith & Gadow, PC, Phoenix
By Stephen R. Smith
*Co-Counsel for Respondent/Appellee*

Fennemore Craig, P.C., Phoenix
By Timothy J. Berg, Alexander R. Arpad
*Co-Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Chief Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Donn Kessler joined.

_____

**J O H N S E N**, Judge:

¶1            Jaime Shurts ("Wife") appeals from certain rulings by the superior court in a dissolution decree.  For the reasons stated below, we affirm the decree.

**FACTS AND PROCEDURAL BACKGROUND**

¶2            The parties entered into a premarital agreement ("PMA") in October 2008 and married shortly thereafter.  Wife filed a petition for dissolution in May 2011.  After a two-day bench trial, as relevant to this appeal, the superior court ruled that two Flagstaff homes remained Husband's separate property and that property known as the 90th Street property was worth $850,000 at the time Husband transferred it to Wife. The court also awarded Wife a portion of her attorney's fees.  Wife filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2014).[1]

**DISCUSSION**

**A.      The Flagstaff Homes.**

¶3            Prior to the marriage, Husband owned two Flagstaff homes as his separate property.  In January 2011, Husband deeded ownership of the homes to himself and Wife as community property with right of survivorship. The parties dispute the effect of these deeds under seemingly conflicting provisions in the PMA.

¶4            Wife argues the deeds should be enforced pursuant to Paragraph 5.9.1 of the PMA, which provides as follows:

> Title Determines Ownership.   Title shall determine the ownership interest of each of us in any real property held by us . . . unless we agree otherwise in writing.  However, titling

_____

[1]      Absent material revision after the date of the events at issue, we cite a statute's current version.

errors which are made by third parties, or incorrect titling which clearly conflicts with the intent of a party or parties changing or taking title, are subject to correction. We understand that holding property as community property, tenants in common, in joint tenancy, or in other forms may have important legal consequences to each of us. We have been advised that we should review and understand the consequences of the form of ownership at any time we take title to assets or property in any form as joint owners.

¶5 Husband relies on Paragraph 5.9.7 of the PMA, which states:

> No Transmutation. Any sole and separate property of either party which is later converted to any other form including, but not limited to, transfers of accounts, changes in investments, changes in title (excluding a change from one party full to the other), exchanges of property or sale of any present investment will continue to be the sole and separate property of the acquiring party. Arizona law regarding transmutation of the character of property will not apply.

He also argues the court's ruling is supported by the following language in the preliminary portion of the PMA:

> WHEREAS, each of the parties hereto has agreed to accept the provisions of this Agreement in lieu of his or her marital and/or community property rights in the property now owned or hereafter acquired by the other or in the estate of the other that is traceable to the sole and separate property now existing or that may otherwise be acquired by the other as a surviving spouse . . . .

¶6 Wife argues the superior court erred by hearing extrinsic evidence of the parties' intent in entering in the PMA. "When contract provisions appear to contradict each other, we try to 'harmonize all parts of the contract . . . by a reasonable interpretation in view of the entire instrument.'" *Wilshire Ins. Co. v. S.A.*, 224 Ariz. 97, 99, ¶ 10, 227 P.3d 504, 506 (App. 2010) (quoting *Brisco v. Meritplan Ins. Co.*, 132 Ariz. 72, 75, 643 P.2d 1042, 1045 (App. 1982)). "Whether contract language is reasonably susceptible to more than one interpretation so that extrinsic evidence is admissible is a question of law for the court." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158-59, 854 P.2d 1134, 1144-45 (1993). Given the apparently conflicting provisions recited above, the superior court did not

err in concluding the language of the PMA was reasonably susceptible to more than one interpretation and admitting extrinsic evidence to assist it in interpreting the agreement.

¶7 Although Husband contended the PMA reflected the parties' intent to avoid creating community property, Wife argued evidence that the parties transferred several real properties into Shurts Properties, L.L.C., demonstrated they intended to create a marital estate. However, the parties each owned one-half of Shurts Properties, as separate property. Therefore, the transfers to Shurts Properties did not create any community property. Husband testified he deeded the Flagstaff homes to the community for strategic purposes in an unrelated lawsuit. Strictly speaking, the issue at trial was not Husband's intent in deeding the Flagstaff homes, but the court did not err by admitting the testimony to the extent that Husband's intent with respect to the deeds was relevant to the parties' understanding of the meaning of the PMA.

¶8 The parties' intent is a question of fact for the fact finder, *see Chopin v. Chopin*, 224 Ariz. 425, 428, ¶ 7, 232 P.3d 99, 102 (App. 2010), and we will not reverse the fact finder's determination unless it is clearly erroneous. *See In re Estate of Jung*, 210 Ariz. 202, 204, ¶ 11, 109 P.3d 97, 99 (App. 2005). The superior court concluded that the overall purpose of the PMA was to avoid creating a "marital estate" and to have each party leave the marriage with what he or she brought into it, with the exception of a termination payment to Wife. Thus, the court determined, on the evidence before it, that the provision of the PMA precluding transmutation of property rendered the deeds ineffective in conveying ownership to the community.

¶9 The court's interpretation of the parties' intent in entering into the PMA is supported by the broad language in the PMA setting forth the parties' desire to forgo community property rights in favor of the rights set forth in the PMA. Additionally, other provisions of the PMA suggest the parties did not intend to change separate property to community property. *See* PMA ¶¶ 5.9.2 to 5.9.5, 5.9.7 to 5.9.9, 9.1. Although the PMA allowed the parties to enter into future written agreements regarding property, *see* PMA ¶¶ 5.1.8, 5.9.9, 6.3, 14.3, 14.4, these provisions do not compel this court to adopt Wife's interpretation. "We must defer, absent clear error, to the factual findings upon which the trial court's conclusions are based." *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 246–47, ¶ 16, 119 P.3d 1044, 1049–50 (App. 2005).

¶10 As Husband argues, Paragraph 5.9.7 states that any sole property that experiences a "change[] in title . . . will continue to be the sole and separate property of the acquiring party." We construe Paragraph 5.9.7 to limit the applicability of Paragraph 5.9.1 with respect to a change of title of property that one party has held as sole and separate. According to Paragraph 5.9.7, when such property changes title, notwithstanding Paragraph 5.9.1, the property remains the sole property of the first party. The limiting language in Paragraph 5.9.7, "excluding a change from one party full to the other," does not apply here because the deeds purporting to transfer the Flagstaff homes did not convey the properties from Husband to Wife "full." The deeds purported to change title from Husband's sole property to Husband and Wife, as community property. Given Paragraphs 14.3 and 14.4 of the PMA, the parties would have had to enter into a separate executed written agreement that Husband was transferring the properties to the community to make the deeds effective.

¶11 Wife argues that the "no transmutation language" in Paragraph 5.9.7 does not apply to the deeds because "[t]ransmutation, by operation of law, does not apply to real estate." *See Potthoff v. Potthoff*, 128 Ariz. 557, 562, 627 P.2d 708, 713 (App. 1981). *Potthoff* held transmutation by commingling does not apply to real property; it did not hold that real property cannot be transmuted by some other method. *See id.* As Wife recognizes, a transfer and a transmutation are not mutually exclusive. *See State ex rel. Indus. Comm'n of Ariz. v. Wright*, 202 Ariz. 255, 257-58, ¶ 11, 43 P.3d 203, 205-06 (App. 2002). "Separate property can be transmuted into community property by agreement, gift or commingling." *In re Marriage of Cupp*, 152 Ariz. 161, 164, 730 P.2d 870, 873 (App. 1986). Paragraph 5.9.7 precludes any form of transmutation, not just transmutation by commingling. Because the PMA prohibits the transfer of separate property to community property, the deeds could not transmute the separate properties to community properties.

¶12 Wife contends the PMA allows the parties to transfer property and change the character of property from separate to community property in writing. *See* PMA ¶¶ 5.9.3, 5.1.6. Paragraph 5.9.3 provides:

> Transfers of Ownership. Notwithstanding the provisions of the Agreement, either of us may transfer, convey, devise, or bequeath any property to the other during our marriage or upon death. Neither of us intends by this Agreement to limit or restrict in any way the right to receive any such transfer, conveyance, devise, or bequest from the other at such future

time. Such transfers must be evidenced by a written instrument signed by the transferor . . . .

As Husband suggests, however, Paragraph 5.9.3 applies to transfers from one party "to the other," which we construe to mean from one party's separate property to the other's separate property. This interpretation is consistent with Paragraph 5.9.7, which precludes changes in title except "from one party full to the other." Thus, absent a signed writing consistent with Paragraphs 14.3 and 14.4 of the PMA, the PMA provides for a transfer of separate property by one party to the other as separate property, but not for a transfer of separate property to the community.[2] This is consistent with the intent of the PMA to have each party leave the marriage without any community property. *See supra* ¶¶ 8-9.

**¶13** Wife also contends that Paragraph 5.9.7 is inconsistent with Paragraph 5.1.6, which states:

> We may change the character of property from separate to community or community to separate by the terms of this Agreement or by another instrument in writing. If this is done, it should be done very carefully and preferably with legal advice, with full understanding of the consequences including relationship to the death of either of us or the termination of our marital status.

**¶14** However, Paragraph 5.1.6 is part of an entire section of the PMA that sets forth Arizona community property law and then expresses the parties' intent to avoid that law. *See* PMA ¶¶ 5.1.7, 5.1.8. The introductory language to PMA section 5.1 states that the parties were advised of Arizona law, then Paragraphs 5.1.1 through 5.1.6 state general principles of community property law. Paragraph 5.1.6 is not, as Wife argues, an agreement between the parties that one spouse may transfer his or her separate property to the community without a writing complying with Paragraphs 14.3 and 14.4.

**¶15** Further, Paragraph 5.1.7 expressly declines to adopt general community property rules by stating, "Nothing in this section shall have the effect of determining or changing our rights." Paragraph 5.1.8 also

---

[2] Because Shurts Properties was held as separate property, Husband and Wife could transfer separate property to Shurts Properties consistent with Paragraphs 5.9.3 and 5.9.7.

provides that, "[n]otwithstanding the foregoing" statement of community property law in Paragraphs 5.1.1 through 5.1.7, the parties intended the terms of the PMA to define their property rights, absent a future written agreement. Reading Section 5.1 as a whole, Paragraph 5.1.6 merely states a general principle of Arizona community property law: Parties may agree to change the separate or community character of their property in a premarital agreement or other written instrument.

¶16 Wife also argues Paragraph 5.9.4 states that if there is any ambiguity in the PMA, Paragraph 5.9.1 shall govern. Paragraph 5.9.4 states:

> Commingling of Property. The occurrence of transfers through a community account or other form of community ownership or the mistaken commingling or otherwise failing to segregate the separate property or separate income of either of us by a third party alone shall not change or constitute a change of character of that property or income, nor shall it constitute a transmutation of that separate property or income into community, quasi-community, joint marital, or other similar type of property, and vice versa, except that the terms of sections 5.9.1 and 5.9.2 shall prevail.

¶17 We conclude that Paragraph 5.9.4 does not apply. This paragraph applies to situations in which the character of property is altered by commingling, but the character of real property cannot be altered by commingling. *See Potthoff*, 128 Ariz. at 562, 627 P.2d at 713.

¶18 Wife contends the superior court's interpretation renders Paragraph 5.9.1 entirely meaningless. To the contrary, Paragraph 5.9.1 applies to commingled property pursuant to Paragraph 5.9.4. Additionally, Paragraph 5.9.1 also applies to future purchases pursuant to Paragraph 6.3, whereas Paragraph 5.9.7 governs separate property owned at the time of marriage, such as the Flagstaff homes. Wife also contends that applying Paragraph 5.9.1 to future purchases is contrary to Paragraph 6.3. But the language of Paragraph 6.3 expressly states that for future purchases from separate or community property, "the provisions in Section 5.9.1 shall control unless these expenses are to be categorized differently by the parties in writing evidencing something to the contrary."

¶19 Finally, because the parties agreed in the PMA that Arizona community property law would not apply, we reject Wife's argument that the decree is inconsistent with Arizona law that presumes a gift when one spouse places his or her separate property in joint tenancy with the other

spouse and requires clear and convincing evidence to rebut this presumption. *See Valladee v. Valladee*, 149 Ariz. 304, 307, 718 P.2d 206, 209 (App. 1986).

## B. Value of 90th Street Property.

**¶20** An amendment to the PMA requires Husband to pay Wife $1 million or the equivalent when either party filed a petition for dissolution. The superior court ordered Husband to pay Wife $1 million in cash or deed the 90th Street property to Wife with an additional cash payment of $150,000.

**¶21** At trial, Wife argued that the 90th Street property was worth less than $850,000. Wife offered an appraisal of the property that showed the value of the home in December 2011 was between $701,000 and $715,000. However, Wife listed the property for sale at $949,000 in May 2011, at the time she filed for dissolution. The superior court concluded $850,000 was a reasonable valuation as of May 2011.

**¶22** On appeal, Wife argues the superior court abused its discretion in valuing the property at $850,000 because the only evidence at trial was the much lower appraisal. "The valuation of assets is a factual determination that must be based on the facts and circumstances of each case." *Kelsey v. Kelsey*, 186 Ariz. 49, 51, 918 P.2d 1067, 1069 (App. 1996). "We will uphold the court's factual findings unless clearly erroneous or unsupported by any credible evidence." *Valento v. Valento*, 225 Ariz. 477, 481, ¶ 11, 240 P.3d 1239, 1243 (App. 2010).

**¶23** In May 2011, after the petition for dissolution was filed and the parties were negotiating the $1 million termination payment, Wife proposed valuing the 90th Street property at $800,000.[3] Husband, however, believed the property was worth more, based on the May 2011 list price of $949,000. Wife testified the list price was high because it took into account improvements the parties planned but never completed. Although the list price does not necessarily determine the actual value, Wife took the position

---

[3] In her reply brief, Wife for the first time argues the valuation used during the parties' settlement negotiations was inadmissible pursuant to Arizona Rule of Evidence 408. Wife did not raise this objection at trial; therefore, it is waived. *See Shell Oil Co. v. Gutierrez*, 119 Ariz. 426, 437, 581 P.2d 271, 282 (App. 1978). Moreover, we will not consider arguments made for the first time in a reply brief. *In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶ 25, n.5, 5 P.3d 911, 917 (App. 2000).

in May 2011 that the home was worth $800,000. An owner is competent to testify as to the value of his or her property. *See Town of Paradise Valley v. Laughlin*, 174 Ariz. 484, 486, 851 P.2d 109, 111 (App. 1992). Thus, the court properly considered the value Wife placed on the property in May 2011, the time the termination payment was due.

**¶24** The evidence showed a range in value from $949,000 in May 2011 to $715,000 in December 2011. Given that evidence, we cannot say that the $850,000 valuation was an abuse of discretion.

## C.    Attorney's Fees Award.

**¶25** Wife requested $191,746.87 in attorney's fees and costs; the court awarded her $74,118.35. Pursuant to A.R.S. § 25-324(A) (2014) the superior court may award attorney's fees to one party to a dissolution "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." We review an award of attorney's fees for an abuse of discretion. *See Magee v. Magee*, 206 Ariz. 589, 590, ¶ 6, 81 P.3d 1048, 1049 (App. 2004).

**¶26** Wife contends that because there is a vast disparity in financial resources favoring Husband, the superior court abused its discretion in awarding her less than all of the fees she requested. However, a disparity in financial resources by itself does not mandate an award of fees to the less wealthy party. *See Myrick v. Maloney*, 235 Ariz. 491, __, ¶ 9, 333 P.3d 818, 821 (App. 2014); *see also Magee*, 206 Ariz. at 593, ¶ 18, 81 P.3d at 1052. "If the trial court finds such a disparity, it is then authorized to undertake its discretionary function of determining whether an award is appropriate." *Id.*

**¶27** Wife also argues the superior court abused its discretion by awarding her only a portion of the fees she requested because Husband took unreasonable positions during the litigation. The superior court found both parties took unreasonable positions in the proceedings. Wife does not challenge these findings, which are supported by the evidence. Therefore, we cannot say the superior court abused its discretion in entering its fees award.

**¶28** Wife argues the court should have awarded all of her attorney's fees as a sanction. She cites *In re Marriage of Benge*, 151 Ariz. 219, 224, 726 P.2d 1088, 1093 (App. 1986), in which the court awarded all of the wife's fees pursuant to A.R.S. § 25-324 plus $10,000 as a sanction pursuant to A.R.S. § 12-341.01(C) (2014). Unlike the wife in *Benge*, Wife in this case was not "rendered near[ly] destitute by [Husband's] actions." *Id.*

¶29   Finally, Wife contends the superior court awarded her attorney's fees on three different occasions throughout the litigation, but she never received the judgments. The record contains three judgments corresponding to these fee awards totaling $5,285.50. *See* Instrument Nos. 251 ($3,225.50), 345 ($580), 346 ($1,480). We affirm the attorney's fees award.

## D.  Attorney's Fees on Appeal.

¶30   Wife requests an award of attorney's fees on appeal pursuant to A.R.S. § 25-324. Husband acknowledges his superior financial position but argues Wife has taken unreasonable positions on appeal and has sufficient resources to pay her own attorney's fees.

¶31   Husband asks us to take judicial notice of the public record showing the post-decree sale price of Wife's 90th Street property. Wife asks this court to strike this evidence, or, alternatively, grant a hearing regarding the propriety of taking judicial notice. *See* Ariz. R. Evid. 201(e). Wife also asks this court to take judicial notice of a post-trial order of protection.

¶32   Arizona Rule of Evidence 201 allows an appellate court to take judicial notice of appropriate matters. *See* Ariz. R. Evid. 201(b); *see also In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4, 10 P.3d 1211, 1212 (App. 2000) (appellate court can "take judicial notice of anything of which the trial court could take notice, even if the trial court was never asked to take notice"). Although we may take judicial notice of the sales price shown in a public document, the sales price does not establish the net proceeds Wife received upon the sale of the 90th Street property. Therefore, this evidence does not affect our consideration of the parties' financial resources. Similarly, we may take notice of an order of protection, but the order of protection is not evidence of a reduction in Wife's income, as she suggests.

¶33   In light of both parties' reasonable positions on appeal and Husband's far superior financial resources, we award Wife her reasonable attorney's fees on appeal upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure ("ARCAP").

¶34   Wife also requests an award of attorney's fees as a sanction for having to file a motion to strike Husband's notice of filing supplementary documents. Husband's notice was not improperly filed; therefore, fees are not warranted pursuant to Rule 31, Arizona Family Law Rules of Procedure. We exercise our discretion pursuant to A.R.S. § 25-324

and order each party to bear his or her own attorney's fees relating to the notice and motion to strike.[4]

## CONCLUSION

¶35        We affirm the decree. As the successful party on appeal, Husband is entitled to his costs pursuant to A.R.S. § 12-342(A).



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

---

[4]        Husband also filed a motion to supplement the record with two pleadings that were filed in superior court.  This court previously denied the motion without prejudice because the superior court clerk had not yet sent the entire record to this court.  The record on appeal is now complete and contains the two items Husband asked to have supplemented. Therefore, the motion is moot.